# Exhibit 1

EFiled: Sep 06 2023 02:23PM EDT
Transaction ID 70800727
Case No. S23C-09-003 MHC

# Exhibit 1

# MASTER SERVICES AGREEMENT

This Master Services Agreement (the "Agreement") is made on ____ (the "Effective Date") by and between **VINCERX PHARMA, INC.** ("Vincerx") and **YOURWAY TRANSPORT, INC.**, a Pennsylvania corporation, having a place of business at 6681 Snowdrift Road, Allentown, PA 18106 ("YWT").

**1.** **Agreement Structure.** From time to time, Vincerx may want YWT to provide certain Services (defined below). This Agreement contains general terms and conditions under which Vincerx would engage and under which YWT would provide the Services. Vincerx and YWT must complete and execute a Quote (defined below) before any Services are provided. Once executed, each Quote becomes part of this Agreement, although the terms in a Quote will apply only to Services described in that Quote. Unless expressly agreed, Quote may not change or modify any term in this Agreement.

**2.** **Definitions.** The capitalized terms used in this Agreement shall have the meanings set forth below.

(a) "Affiliate" means, with respect to either Vincerx or YWT, any corporation, company, partnership, joint venture and/or firm which controls, is controlled by or is under common control with Vincerx or YWT, as applicable. As used in this definition, "control" means (i) in the case of corporate entities, direct or indirect ownership of more than percent (50%) of the stock or shares having the right to vote for the election of directors (or such lesser percentage that is the maximum allowed to be owned by a foreign corporation in a particular jurisdiction); and (ii) in the case of non-corporate entities, the direct or indirect power to manage, direct or cause the direction of the management and policies of the non-corporate entity or the power to elect more than fifty percent (50%) of the members of the governing body of such non-corporate entity.

(b) "Applicable Law" means all applicable ordinances, rules, regulations, laws, guidelines, guidance's, requirements and court orders of any kind whatsoever of any Authority, as amended from time to time including cGMP.

(c) "Authority" means any government regulatory authority responsible for granting approvals or issuing regulations pertaining to the performance of the Services and/or use of Product in the intended country of use, including the FDA.

(d) "cGMP" means current good manufacturing practices and regulations applicable to the performance of the Services with respect to a Product that are promulgated by any Authority.

(e) "Facility" means the facilities of YWT located at 6681 Snowdrift Rd. Allentown, PA 18106.

(f) "FDA" means the United States Food and Drug Administration, and any successor agency having substantially the same functions.

(g) "Product" means the product that is the subject of the Services to be provided by YWT, in each case as specified in the applicable Quote.

(h) "Quality Agreement" means a Quality Agreement containing quality assurance provisions for the provision of the Services with respect to a Product.

(i) **"Quote"** means a written form, signed by each of the parties, describing (a) the Services to be provided, (b) cost for the performance of such Services, (c) timelines for the performance thereof, and (d) any supplemental terms and conditions unique to such performance, e.g., Specifications.

(j) "Services" means packaging, labeling, quality control testing, stability testing, release, storage, distribution, and/or destruction of Product, together with such other services as are specified in the applicable Quote.

(k) "Specifications" means the set of standards, as set forth in the applicable Quote, that the Services

and, if applicable, any Product Produced (as such term is defined in such Quote), under such Quote, must meet in order to be acceptable. The term "Specifications" includes any revised Specifications agreed in writing between the parties.

3. **Services.**

3.1. **Services.** YWT agrees to provide all Services identified in any Quote: (a) within the time period specified in the relevant Quote; and (b) in accordance with the highest prevailing industry standards and practices for the performance of similar services. For each Quote, YWT will designate a "Project Leader" who will be available for frequent communications with Vincerx regarding the Services provided under that Quote, as well as contacts for administrative and payment matters for those Services. Vincerx will designate a "Vincerx Representative" who will be the point of contact for the Project Leader.

3.2. **Change Orders.** If either party identifies a need to modify a Quote, the identifying party will notify the other party in writing as soon as reasonably possible. YWT will use reasonable efforts to provide to Vincerx within ten (10) business days after receiving or providing the notice described above a written change order containing a description of the required modifications and their effect on the scope, fees and timelines specified in the Quote (each, a "Change Order"). No Change Order will be effective unless and until it has been signed by an authorized representative of each party. If Vincerx does not approve a Change Order and has not terminated the Quote, but still desires that the Quote be modified, then the parties will use good faith efforts to agree on a Change Order that is mutually acceptable. YWT will continue to work under the existing Quote during any such negotiations, to the extent such efforts are practicable and would facilitate the completion of the work envisioned in the Quote, but will not commence work in accordance with the Change Order until it is authorized in writing by Vincerx. The changed or additional Services provided by YWT under a fully-signed Change Order shall be governed by all of the terms and conditions of this Agreement and the applicable Quote, as amended.

3.3. **Duty to Notify.** YWT will promptly notify Vincerx if, at any time during the term of a Quote, YWT has reason to believe that it will be unable to perform or complete the Services in a timely manner. Compliance by YWT with this Section 3.3 will not relieve YWT of any other obligation or liability under this Agreement or applicable Quote.

3.4. **Subcontracting.** With Vincerx' prior written consent, YWT may subcontract the performance of specific obligations of YWT under a Quote to an Affiliate of YWT or to a qualified non-Affiliate third party, including consultants; provided, that (a) such Affiliate or third party performs those Services in a manner consistent with the terms and conditions of this Agreement; and (b) YWT remains liable for the performance of such Affiliate or third party.

3.5. **Quality Agreement.** If appropriate or if required by Applicable Law, the parties will also agree upon a Quality Agreement.

3.6. Vincerx Retained Rights. Nothing in this Agreement or in any Quote will prevent Vincerx from carrying out itself or with any third party, at any time, any services identical or similar to any Services.

4. **Performance Requirements.**

4.1. **Facility.** YWT will perform all Services at the Facility and will not change the location of such Facility or use any additional facility for the performance of the Services without at least one hundred fifty (150) days prior written notice to, and prior written consent from, Vincerx, which consent will not be unreasonably withheld or delayed (it being understood and agreed that Vincerx

DocuSign Envelope ID: BFCB9EC8-6D86-4A7F-AEAB-AC22BA64A9D9

may withhold consent pending satisfactory completion of a quality assurance audit and/or regulatory impact assessment of the new location or additional facility, as the case may be). YWT will maintain, at its own expense, the Facility and all equipment required for the performance of the Services in a state of repair and operating efficiency consistent with the requirements of Applicable Law, including cGMP.

4.2. **Licenses and Permits.** YWT will be responsible for obtaining, at its expense, any Facility or other licenses or permits, and any regulatory and government approvals necessary for the performance of the Services by YWT under the applicable Quote. At Vincerx' request, YWT will provide Vincerx with copies of all such approvals and submissions to Authorities.

5. **Audits.** YWT will allow (a) representatives of Authorities, and (b) with advance notice and during normal business hours, Vincerx employees and representatives, to review YWT's standard operating procedures and Records (as defined in Section 9.4), including financial records, to inspect the Facility and to observe performance of the Services under the applicable Quote. In addition, the Project Leader and Vincerx Representative and their designees will participate in meetings to review performance of the Services and to coordinate such Services as necessary. YWT will supply to Vincerx copies of all standard operating procedures relevant to the Services upon request.

6. **Regulatory Matters.**

6.1. **Regulatory Contacts.** Vincerx will be solely responsible for all contacts and communications (including submission of information) with any Authorities with respect to matters relating to any Product or the Services. Unless required by Applicable Law, YWT will have no contact or communication with any Authority regarding the Product or the Services without the prior written consent of Vincerx, which consent will not be unreasonably withheld. YWT will notify Vincerx promptly, and in no event later than one (1) business day, after YWT receives any contact or communication from any Authority relating in any way to any Product or the Services and will provide Vincerx with a summary of such contact and copies of any such communication within one (1) business day after YWT's receipt of such contact or communication. Unless prohibited by Applicable Law, YWT will consult with Vincerx regarding the response to any inquiry or observation from any Authority relating in any way to any Product or the Services and will allow Vincerx at its discretion to control and/or participate in any further contacts or communications relating to any Product or the Services. YWT will comply with all reasonable requests and comments by Vincerx with respect to all contacts and communications with any Authority relating in any way to any Product or the Services.

6.2. **Regulatory Approvals.** Vincerx will be responsible for obtaining, at its expense, all regulatory and government approvals and permits necessary for Vincerx use of any Product including any IND, BLA, NDA, and ANDA submissions and any analogous submissions filed with the appropriate Authority of a country other than the United States. YWT will, upon request, provide Vincerx with all supporting data and information relating to the Services under the applicable Quote that are or may be necessary for obtaining regulatory and governmental approvals and permits necessary for Vincerx use of the Product(s) that is the subject of such Quote.

6.3. **Regulatory Inspections.** YWT will provide with a copy of any report or other written communication received from any Authority in connection with any visit or inspection of the Facility or the Services (to the extent it relates in any way to any Product), within one (1) business day after receipt, and will consult with, and require approval from, Vincerx before responding to each such communication. YWT will provide Vincerx with a copy of its final responses within five (10) business days after submission.

6.4. **Safety Procedures.** YWT will be solely responsible for implementing and maintaining health and

safety procedures for the performance of Services and for the handling of any materials or hazardous waste used in or generated by the Services. YWT, in consultation with Vincerx will develop safety and handling procedures for Product; provided, however, that Vincerx will have no responsibility for YWT's health and safety program.

**6.5.** Care in Use of Materials. YWT acknowledges that the Materials (defined below) are experimental in nature and may have unknown characteristics and therefore agrees to use prudence and reasonable care in the use, handling, storage, transportation, disposition and containment of the Materials. In no event shall the Materials be introduced into humans or non-laboratory animals.

**6.6.** Safety Reporting. YWT understands and agrees that in conjunction with the limitations on use and handling of Material, and Vincerx' obligation to evaluate exposure to the Materials, accidental and otherwise, that YWT will report any and all such exposures, and any follow up thereto, to Vincerx. Vincerx agrees to cooperate with YWT by providing reasonable access to its clinical, safety, QA, and discovery staff, information, and additional Materials to assist YWT in assessing the risk of exposure and planning follow up assessments for the exposed individual(s). YWT agrees to de-identify all such reports, providing only that information strictly necessary for Vincerx to evaluate the exposure, and no information that would permit Vincerx or any third party to identify the exposed individual(s). YWT understands and agrees that the information contained in such reports may be given to Vincerx' employees, other researchers and/or agents who are working with the Materials, and reported by Vincerx to the U.S. Food and Drug Administration and its equivalent regulatory agencies in other jurisdictions.

**7.** **Representations and Warranties of YWT.** YWT represents and warrants as follows:

**7.1.** **Organization of YWT.** YWT is and will remain a corporation or company duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.

**7.2.** **Enforceability of this Agreement.** The execution and delivery of this Agreement by YWT has been authorized by all requisite corporate or company action. This Agreement is and will remain a valid and binding obligation of YWT, enforceable in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors.

**7.3.** **Absence of Other Contractual Restrictions.** YWT is under no contractual or other obligation or restriction that is inconsistent with YWT's execution or performance of this Agreement. YWT will not enter into any agreement, either written or oral, that would conflict with YWT's responsibilities under this Agreement.

**7.4.** **Qualifications of YWT Personnel.** YWT has engaged, will engage and will cause its Affiliates involved in rendering Services to engage, employees and permitted subcontractors including consultants (collectively, "YWT Personnel") with the proper skill, training, availability and experience to provide Services. Before providing Services, all YWT Personnel must be subject to binding written agreements with YWT under which they (a) have confidentiality obligations with regard to Vincerx 's Confidential Information (as defined in Section 10) that are consistent with the terms of this Agreement; and (b) assign and effectively vest in YWT any and all rights that such personnel might have in the results of their work without any obligation of Vincerx to pay any royalties or other consideration to such YWT Personnel.

**7.5.** **Compliance.** YWT will perform all Services with requisite care, in accordance with the terms of this Agreement and any Quote appended hereto, the Quality Agreement (if any) and Applicable Law. Without limiting YWT's obligation to comply with Applicable Law in providing Services,

YWT agrees to comply with the United States Foreign Corrupt Practices Act, as amended from time to time, and the OECD Anti-Bribery Convention with regard to Services including not offering or giving anything of value to a foreign public official in connection with the performance of the official's duties or inducing an official to use their position to influence any acts or decisions of any foreign, state or public international organization. Unless otherwise specified in a Quote, Services will be rendered in accordance with the requirements of cGMP.

**7.6.** **Conflicts with Rights of Third Parties.** The conduct and provision of the Services will not violate any patent, trade secret or other proprietary or intellectual property right of any third party.

**7.7.** **Absence of Debarment.** YWT, its Affiliates, YWT Personnel and each of their respective officers and directors, as applicable: (a) have not been debarred and are not subject to a pending debarment, and will not use in any capacity in connection with the Services any person who has been debarred or is subject to a pending debarment, pursuant to section 306 of the United States Food, Drug and Cosmetic Act, 21 U.S.C. § 335a; (b) are not ineligible to participate in any federal and/or state healthcare programs or federal procurement or non-procurement programs (as that term is defined in 42 U.S.C. 1320a-7b(f)); (c) are not disqualified by any government or regulatory authorities from performing specific services, and are not subject to a pending disqualification proceeding; and (d) have not been convicted of a criminal offense related to the provision of healthcare items or services and are not subject to any such pending action. YWT will notify Vincerx immediately if YWT, its Affiliates, any YWT Personnel, or any of their respective officers or directors, as applicable, is subject to the foregoing, or if any action, suit, claim, investigation, or proceeding relating to the foregoing is pending, or to the best of YWT's knowledge, is threatened.

**8.** **Compensation.** As full consideration for Services, Vincerx will pay YWT the undisputed amounts set forth in the applicable Quote in accordance with the payment schedule set forth in such Quote. In the event that Vincerx disputes an amount in a respective invoice, it will pay all undisputed amounts therein, and the parties shall work together, in good faith, to resolve any disputed amounts. The cost of performance shall not include ordinary business expenses, including without limitation, travel, meals, and courier service. Such expenses will be paid by Vincerx, subject to verification, within 30 days of Vincerx' receipt of (a) receipts for such expenses, and (b) a proper written invoice therefor. YWT will invoice Vincerx for all amounts due in United States Dollars. All undisputed payments will be made by Vincerx within thirty (30) days after its receipt of an invoice and reasonable supporting documentation for such invoice.

**9.** **Proprietary Rights.**

**9.1.** **Materials.** All documentation, information, and biological, chemical or other materials controlled by Vincerx and furnished to YWT by or on behalf of Vincerx and all Product (collectively, with all associated intellectual property rights, the "Materials") will remain the exclusive property of Vincerx. YWT will use Materials only as necessary to perform the Services. YWT will not analyze Materials except as necessary to perform the Services and will not transfer or make the Materials available to third parties without the prior express written consent of Vincerx, YWT agrees that Vincerx will at all times retain title to and ownership of the Materials, any intermediates and components of Materials, and any work in process at each and every stage of the Services. YWT will provide within the Facility an area or areas where the Materials, any intermediates and components of Materials, and any work in process are segregated and stored in accordance with the Specifications and cGMP, and in such a way as to be able at all times to clearly distinguish such materials from products and materials belonging to YWT, or held by it for a third party's account. YWT will ensure that Materials, any intermediates and components of any Materials, and any work in process are free and clear of any liens or encumbrances. YWT will at all times take such measures as are required to protect the Materials, any intermediates and components of any Materials, and any work in process from loss, damage and theft at all stages of the Services. YWT will

immediately notify Vincerx if at any time it believes any Materials, or any intermediates and components of any Materials, or any work in process have been damaged, lost or stolen.

9.2. **Deliverables.**

(a) **Ownership**. Vincerx will own all rights throughout the world to the Materials and all inventions, discoveries, improvements, ideas, processes, formulations, computer programs, works of authorship, databases, trade secrets, know-how, information, data, documentation, reports, research, creations and all other products and/or materials arising from or made in the performance of the Services (whether or not patentable or subject to copyright or trade secret protection) (collectively, with all associated intellectual property rights, the "Deliverables"). YWT will assign and does assign to Vincerx all right, title and interest in and to all Deliverables and will promptly disclose to Vincerx all Deliverables. For purposes of the copyright laws of the United States, Deliverables constitute "works made for hire," except to the extent such Deliverables cannot by law be "works made for hire".

(b) **Cooperation.** During and after the term, YWT will, and will cause its Affiliates and YWT Personnel to, (i) cooperate fully in obtaining patent and other proprietary protection for any patentable or protectable Deliverables, all in the name of Vincerx and at Vincerx' cost and expense; and (ii) execute and deliver all requested applications, assignments and other documents, and take such other measures as Vincerx reasonably requests, in order to perfect and enforce Vincerx' rights in the Deliverables. YWT appoints Vincerx its attorney to execute and deliver any such documents on behalf of YWT, its Affiliates, and YWT Personnel in the event YWT, its Affiliates, or YWT Personnel fail to do so.

(c) **YWT Property.** Notwithstanding the foregoing, YWT will retain full ownership rights in and to all templates, programs, methodologies, processes, technologies and other materials developed or licensed by YWT and its Affiliates prior to or apart from performing its obligations under this Agreement (collectively, with all associated intellectual property rights, the "YWT Property"), regardless of whether such YWT Property is used in connection with YWT's performance of its obligations under this Agreement. YWT will grant and does grant to Vincerx and its Affiliates a perpetual, non-exclusive, fully paid-up worldwide, sub-licensable license to use YWT Property as required for Vincerx and its Affiliates to use the Deliverables.

9.3. **Work at Third Party Facilities.** YWT agrees not to accept or use any funds, space, personnel, facilities, equipment or other resources of a third party in performing the Services or take any other action that could result in a third party owning or having a right in any Deliverables.

9.4. **Records; Records Storage.** YWT will (a) maintain all materials, data and documentation obtained or generated by YWT in the course of preparing for and providing the Services, including without limitation business, accounting, scientific and/or manufacturing procedures and practices, laboratory notebooks, computerized records and files (collectively, the "Records") in a secure area reasonably protected from fire, theft and destruction, (b) keep Records in form and substance as specified in the applicable Quote, the applicable Quality Agreement (if any), and this Agreement and (c) upon Vincerx' request, promptly provide Vincerx with copies of Records. YWT will retain and archive original Records in accordance with cGMP and Applicable Law. All Records, other than the financial records of YWT, will be the property of Vincerx. YWT will not transfer, deliver or otherwise provide any Records to any party other than Vincerx without the prior written approval of Vincerx.

9.5. **Record Retention.** All Records will be retained by YWT for a minimum period of five (5) years or longer, following completion of the applicable Quote, if required by Applicable Law. YWT will,

at the direction and written request of Vincerx, promptly deliver Records to Vincerx or its designee, or dispose of the Records, unless the Records are required to be retained by YWT by Applicable Law or for insurance purposes. In no event will YWT dispose of any Records without first giving Vincerx sixty (60) days prior written notice of its intent to do so.

**10. Confidentiality.** The parties have entered that certain Confidentiality Agreement, effective 26 January 2021 (the "CDA"), which CDA shall govern the exchange of Confidential Information (as defined therein) between the parties under this Agreement. The terms and conditions of that CDA shall apply to this Agreement, even after the expiry of that CDA, and it is hereby incorporated herein by reference. Any conflicts between that CDA and this Agreement shall be finally resolved in accordance with the terms and conditions of this Agreement.

**11. Indemnification, Insurance and Remedies.**

**11.1. Indemnification by YWT.** YWT will indemnify, defend and hold harmless Vincerx, its Affiliates, and its and their respective officers, directors, employees and agents (collectively, the "Vincerx Indemnitees") against any third party claims, including reasonable attorneys' fees for defending those claims, to the extent such claims arise out of or relate to (a) the performance of the Services by any YWT Indemnitee (as defined in Section 11.2) or any injury or harm to YWT Personnel alleged by such YWT Personnel to have occurred on Vincerx 's or its Affiliates' premises during the course of performance of the Services (except to the extent such claims result from Vincerx' material breach of this Agreement or a Vincerx Indemnitee's negligence or willful misconduct); (b) any YWT Indemnitee's negligence or willful misconduct in performing obligations under this Agreement; or (c) YWT's breach of this Agreement.

**11.2. Indemnification by Vincerx.** Vincerx will indemnify, defend and hold harmless YWT, its Affiliates, and its and their respective officers, directors, employees and agents (collectively, the "YWT Indemnitees") against any third party claims, including reasonable attorneys' fees for defending those claims, to the extent such claims arise out of or relate to (a) the use of the Deliverables by Vincerx or its Affiliates (except to the extent such claims result from YWT's material breach of this Agreement or a YWT Indemnitee's negligence or willful misconduct); (b) any Vincerx Indemnitee's negligence or willful misconduct in performing obligations under this Agreement; or (c) Vincerx 's breach of this Agreement.

**11.3. Indemnification Procedures.** Each party must notify the other party within five (5) business days after receipt of any claims made for which the other party might be liable under Section 11.1 or 11.2, as applicable. The indemnifying party will have the sole right to defend, negotiate, and settle such claims. The indemnified party will be entitled to participate in the defense of such matter and to employ counsel at its expense to assist in such defense; provided, however, that the indemnifying party will have final decision-making authority regarding all aspects of the defense of the claim. The indemnified party will provide the indemnifying party with such information and assistance as the indemnifying party may reasonably request, at the expense of the indemnifying party. Neither party will be responsible or bound by any settlement of any claim or suit made without its prior written consent; provided, however, that the indemnified party will not unreasonably withhold or delay such consent.

**11.4. Insurance**. At all times during the Term of this Agreement (as defined in Section 12.1 below) and for a period of 10 years thereafter, YWT shall maintain adequate and appropriate Comprehensive General Liability and Workers' Compensation insurance, including without limitation, professional liability insurance and general liability insurance. YWT shall, upon request, provide Vincerx with copies of all such policies for its records. YWT shall notify Vincerx of any cancellations, changes or updates to such policies, and shall provide written

documentation thereof within 30 days of any such cancellation, change or update.

**11.5.** **Remedies.** In the event that the Services and Deliverables do not meet the Specifications and other performance criteria agreed to by YWT and Vincerx in writing, including the Specifications where applicable, then YWT will, at Vincerx' option, promptly (a) re-perform such Services at YWT's cost; or (b) refund to Vincerx all amounts paid by Vincerx to YWT in connection with such Services. Further, YWT agrees that (i) Vincerx may be irreparably injured by a breach of this Agreement; (ii) money damages would not be an adequate remedy for any such breach; and (iii) Vincerx will be entitled to seek equitable relief, including injunctive relief and specific performance, without having to post a bond, as a remedy for any such breach. The provisions of this Section 11.5 are not exclusive, and Vincerx may seek any other right or remedy that it may have under this Agreement or otherwise.

**12.** **Expiration and Termination.**

**12.1.** **Expiration.** This Agreement will expire on the later of (a) two (2) years from the Effective Date or (b) the completion of all Services under all Quotes executed by the parties prior to the second anniversary of the Effective Date. This Agreement may be extended by mutual agreement of the parties or earlier terminated in accordance with Section 12.2 or 12.3.

**12.2.** **Termination by Vincerx.** In the event of a breach of this Agreement by YWT which cannot be cured (*e.g.*, breach of confidentiality obligations under Section 10), Vincerx may terminate this Agreement or any Quote with immediate effect, at any time upon written notice to YWT. Further, Vincerx may terminate (a) this Agreement at any time upon thirty (30) days prior written notice to YWT, or (b) a Quote at any time upon five (5) business days prior written notice to YWT.

**12.3.** **Termination by YWT**. YWT may terminate this Agreement or any Quote if Vincerx fails to cure a material breach of this Agreement or of a Quote within thirty (30) days after receiving written notice from YWT of such breach.

**12.4.** **Effect of Termination or Expiration.** Upon termination or expiration of this Agreement, neither YWT nor Vincerx will have any further obligations under this Agreement, or in the case of termination or expiration of a Quote, under that Quote, except that:

(a) YWT will terminate all affected Services in progress in an orderly manner as soon as practical and in accordance with a schedule agreed to by Vincerx and, if requested, will work with Vincerx to transition the relevant Services to Vincerx or its designee, unless Vincerx specifies in the notice of termination that Services in progress should be completed;

(b) YWT will deliver to Vincerx or, at Vincerx' option, dispose of, any Materials in its possession or control and all Deliverables developed through termination or expiration;

(c) Vincerx will pay YWT any undisputed monies due and owing YWT, up to the time of termination or expiration, for Services properly performed and all authorized expenses that are actually incurred and non-mitigable (as specified in the applicable Quote);

(d) YWT will promptly refund any monies paid in advance by Vincerx for Services not rendered;

(e) in accordance with the terms of the CDA, each Recipient will promptly return to the Discloser all of Discloser's Confidential Information (including all copies) provided to Recipient under this Agreement or under any Quote which has been terminated or has expired, except for one (1) copy which Recipient may retain solely to monitor Recipient's surviving obligations of confidentiality and non-use, and in the case of Vincerx, to exercise

all surviving rights of Vincerx under this Agreement.

**12.5** The following provisions of this Agreement shall survive any termination or expiration of this Agreement, or any extension thereof: Articles 2, and 5 through 13; Sections 3.4, 3.6, and this Section 12.5.

**13. Miscellaneous.**

**13.1. Independent Contractor.** YWT is an independent contractor and not an agent or employee of Vincerx. YWT will not in any way represent itself to be an agent, employee, partner of or with Vincerx, and YWT has no authority to obligate or bind Vincerx by contract or otherwise. YWT has full power and authority to determine the means, manner and method of performance of the Services. YWT is responsible for, and will withhold and/or pay, any and all applicable federal, state or local taxes, payroll taxes, workers' compensation contributions, unemployment insurance contributions, or other payroll deductions from the compensation of YWT's employees and other YWT Personnel and no such employees or other YWT Personnel will be entitled to any benefits applicable to or available to employees of Vincerx. YWT understands and agrees that it is solely responsible for such matters and that it will indemnify Vincerx and hold Vincerx harmless from all claims and demands in connection with such matters.

**13.2. Publicity.** Except to the extent required by Applicable Law or the rules of any stock exchange or listing agency, YWT will not make any public statement or release concerning this Agreement or the transactions contemplated by this Agreement or use Vincerx' name or the name of any Affiliate of Vincerx in any form of advertising, promotion or publicity, without obtaining the prior written consent of Vincerx.

**13.3. Notices.** All notices must be in writing and sent to the address for the recipient set forth in the signatures block of this Agreement or at such other address as the recipient may specify in writing under this procedure. Communications and notices to Vincerx will be marked "Attention: General Counsel" and notices to YWT will be marked "Attention: Gulam Jaffer, President". All notices must be given (a) by personal delivery, with receipt acknowledged; or (b) by prepaid certified or registered mail, return receipt requested; or (c) by prepaid recognized express delivery service, e.g., FedEx). Notices will be effective upon receipt or at a later date stated in the notice.

**13.4. Assignment.** Except as expressly provided in Section 3.4, YWT may not assign, delegate or transfer its obligations under this Agreement, in whole or in part, without the prior written consent of Vincerx, and any attempted assignment, delegation or transfer by YWT without such consent will be null and void. Vincerx may assign, delegate or transfer this Agreement in whole or in part without consent of YWT. No assignment, delegation or transfer will relieve either party of the performance of any accrued obligation that such party may then have under this Agreement.

**13.5. Entire Agreement.** This Agreement, together with the attached Appendix A and any fully-signed Quotes, each of which are incorporated into this Agreement, constitute the entire agreement between the parties with respect to the specific subject matter of this Agreement and all prior agreements, oral or written, with respect to such subject matter are superseded. Each party confirms that it is not relying on any representations or warranties of the other party except as specifically set forth in this Agreement. If there is any conflict, discrepancy or inconsistency between the terms of this Agreement and any Quote, Quality Agreement, purchase order or other document or form used by the parties, the terms of this Agreement will control.

**13.6. No Modification.** This Agreement (including any Quote(s)) may be changed only by a writing signed by authorized representatives of each party.

**13.7. Severability; Reformation.** Each provision in this Agreement is independent and severable from

DocuSign Envelope ID: BFCB9EC8-6D86-4A7F-AEAB-AC22BA64A9D9

the others, and no provision will be rendered unenforceable because any other provision is found by a proper authority to be invalid or unenforceable in whole or in part. If any provision of this Agreement is found by such an authority to be invalid or unenforceable in whole or in part, such provision will be changed and interpreted so as to best accomplish the objectives of such unenforceable or invalid provision and the intent of the parties, within the limits of Applicable Law.

**13.8.** **Governing Law.** This Agreement and any disputes arising out of or relating to this Agreement will be governed by, construed and interpreted in accordance with the internal laws of Delaware, without regard to any choice of law principle that would require the application of the law of another jurisdiction.

**13.9.** **Jurisdiction; Venue.** Any legal action or proceeding concerning the validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, or related matters will be brought exclusively in the courts of the State of Delaware. All parties consent to the exclusive jurisdiction of those courts and waive any objection to the propriety or convenience of such venues.

**13.10.** **Waivers.** Any delay in enforcing a party's rights under this Agreement, or any waiver as to a particular default or other matter, will not constitute a waiver of such party's rights to the future enforcement of its rights under this Agreement, except with respect to an express written waiver relating to a particular matter for a particular period of time signed by an authorized representative of the waiving party, as applicable.

**IN WITNESS WHEREOF,** each party has caused this Agreement to be executed by its duly authorized representative as of the Effective Date.

| **VINCERX PHARMA, INC.** | | **YOURWAY TRANSPORT, INC.** | |
|---|---|---|---|
| By: | DocuSigned by: Raquel Izumi E3EBE3134011400... | By: | [signature] |
| Print Name: | Raquel Izumi, Ph.D. | Print Name: | Timothy S Brower |
| Title: | Chief Operations Officer | Title: | President BioPharma Services |
| Date: | 2/12/2021 | Date: | 15 Feb 2021 |
| Address: | 260 Sheridan Ave. | Address: | 6681 Snowdrift Road |
| | Suite 400 | | Allentown, PA 18106 |
| | Palo Alto, CA 94306 | | |